UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JIMMY W.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 3:20-cv-05793-BAT

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE MATTER WITH PREJUDICE**

Plaintiff appeals the denial of his application for Disability Insurance Benefits. He contends the ALJ erred by discounting the medical evidence and his testimony, misevaluating residual functional capacity ("RFC"), and mistakenly determining that plaintiff can perform past relevant work as a house sitter. Dkt. 15. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 55 years old, completed high school, and has worked as a parts salesperson and as a house sitter. Tr. 68, 200–01.[1] In May 2018, he applied for benefits, alleging disability as of March 29, 2018. Tr. 76, 78. His application was denied initially and on

---

[1] Plaintiff disputes that the ALJ cited substantial evidence to support concluding that plaintiff had past relevant work as a house sitter. Dkt. 15, at 9–14; *see* Tr. 26.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE MATTER WITH PREJUDICE - 1

1 reconsideration. Tr. 77–90, 92–108. The ALJ conducted a hearing in June 2019, Tr. 33–74, and issued a September 2019 decision finding plaintiff to be not disabled, Tr. 17–26. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–3.

## THE ALJ'S DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2022, and that plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date of March 29, 2018. Tr. 19. The ALJ found that plaintiff has the severe impairments of chronic headache, possibly migraine; major depressive disorder; and cervical facet arthritis. Tr. 19. The ALJ assessed an RFC of a full range of work at all exertional levels but with additional limitations: he can lift and/or carry from waist height, not from floor height; he can never climb ladders, ropes, or scaffolds; he can frequently stoop but never kneel, crouch, or crawl; he can frequently reach overhead; he can have occasional exposure to vibration and pulmonary irritants but should avoid all exposure to hazards, such as unprotected heights and moving machinery; he can perform tasks with a GED reasoning level of 3; he can have superficial contact with the public. Tr. 21. At step four of the disability evaluation process, the ALJ found that plaintiff can perform past relevant work as a house sitter and, therefore, that plaintiff is not disabled. Tr. 26. The ALJ based her determination that plaintiff had past relevant work as a house sitter on plaintiff's hearing testimony about earning approximately $500 per week for taking care of a friend's property, which involved maintaining the cabin, cutting wood, and using a dozer to maintain the road; plaintiff's reported self-employment income from housesitting of $9,071 in 2005 and $15,154 in 2007; and the vocational expert's testimony that

plaintiff's description of his self-employment comported with the position of "house sitter," DOT 309.367-010. Tr. 26, 41–42, 68, 187.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court finds that the ALJ's evaluation of the medical evidence and plaintiff's testimony, assessment of RFC, and determination regarding plaintiff's past relevant work as a house sitter were supported by substantial evidence and free from harmful legal error.

### 1. Evaluation of the Medical Evidence and Plaintiff's Testimony

Plaintiff contends that the ALJ misevaluated the opinions of treating neurologist Dr. Youngbin Choi and treating headache specialist Dr. Minsoo Kang, as well as erroneously discounted plaintiff's testimony, regarding the debilitating nature of plaintiff's persistent headaches suffered since 2010. Dkt. 15, at 3–8. The Court disagrees.

#### a. Opinions of Drs. Choi and Kang

When considering medical opinions (for applications filed on or after March 27, 2017), the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in her decision how persuasive she finds a medical opinion(s)

and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). And the new regulations eliminate the agency's "treating source rule," which gave special deference to treating doctors' opinions. 82 Fed. Reg. at 5853.

      The ALJ found Dr. Choi's July 2018 opinion that plaintiff was severely debilitated by headaches, Tr. 632–34, to be unpersuasive because it was largely inconsistent with and largely unsupported by the objective medical evidence and plaintiff's demonstrated functioning. Tr. 24–25. Presumably referring to Dr. Choi's opinion that plaintiff's headaches caused memory loss, confusion, and slurring of speech, Tr. 632, the ALJ noted that Dr. Choi did not perform psychological testing. Tr. 25. The ALJ therefore found persuasive the opinion of examining psychologist Dr. Jonathan Allison, who noted that there was no history of memory loss until recent complaints, noted that plaintiff demonstrated no significant symptoms during the examination, and found plaintiff's memory and concentration to be intact. *Id.* The ALJ noted that Dr. Choi's opinion was inconsistent with plaintiff's physical functioning in that Dr. Choi opined that plaintiff needed to use an assistive device when engaging in occasional standing and walking even though plaintiff did not have one at the hearing and did not testify that he needed one. Tr. 25 (citing Tr. 632). The ALJ noted that Dr. Choi's treatment notes do not document the frequency with which plaintiff's symptoms wax and wane so they could not support his opinion that plaintiff would miss four or more workdays a month. Tr. 25 (citing Tr. 717–28). With respect to the objective medical record and plaintiff's demonstrated functioning, the ALJ found

more persuasive the opinions of reviewing physicians Dr. Howard Platter and Dr. Louis Martin, whose opinions noted greater functionality than did Dr. Choi's opinion because, for example, plaintiff's brain MRIs and neurological examinations were normal; plaintiff was alert and oriented and demonstrated intact memory and concentration; and was regularly observed to be in no acute distress. Tr. 24 (citing Tr. 582, 583, 598, 602, 637, 639, 642, 664, 666, 675, 713, 725, 731, 741, 745, 750, 787). The Court observes that plaintiff's alleged physical limitations are also contradicted by the July 2018 medical note that plaintiff injured himself during a trip to Northern California by jumping from a rock 30–35 feet into the water below. Tr. 673–74. Moreover, there is no indication from the medical record that plaintiff's chronic headaches, which began in 2010 and with which he worked for years, increased in severity after the alleged onset date in March 2018.

Plaintiff argues that the ALJ erred by failing to discuss headache specialist Dr. Kang's August 2018 treatment notes but cannot explain how Dr. Kang's observation that plaintiff should engage in headache "trigger avoidance" undermines the ALJ's evaluation of the medical evidence. Dkt. 15, at 7–8 (citing Tr. 642). Dr. Kang referred to "trigger avoidance" as one of numerous nonpharmacologic interventions to improve plaintiff's condition, alongside exercise, frequent hydration, regular diet, and stress management. Tr. 643. That is, Dr. Kang did *not*, as plaintiff implicitly argues, opine that plaintiff could perform work only if he avoided headache triggers. In fact, plaintiff cites *other* medical notes for *additional* headache triggers because the ones mentioned by Dr. Kang based on plaintiff's report—physical activities such as lifting or bending over and stress—appear to be addressed by RFC limitations such as lifting/carrying only from waist height and up; never climbing ladders, ropes, or scaffolds; never kneeling, crouching, or crawling; only occasional exposure to vibration and pulmonary irritants while avoiding all

exposure to hazards; and having only superficial contact with the public. *Compare* Dkt. 15 at 7–8 (citing opinions by Dr. Choi and Dr. W. Dale Overfield) *with* Tr. 641 (Dr. Kang's notes) *and with* Tr. 21 (ALJ's RFC assessment). Dr. Kang stressed the importance of nonpharmacologic interventions due to the "history and negative imagings as well as the normal physical examination." Tr. 643. In declining to discuss Dr. Kang's opinion, the ALJ did not reject "significant probative evidence" and therefore did not commit harmful error. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The Court cannot overturn the ALJ's reasonable interpretation of the medical evidence through extrapolating limitations gleaned from reading Dr. Kang's opinion in the light most favorable to plaintiff.

The Court finds that the ALJ's evaluation of the medical evidence, including specifically the opinions of Drs. Choi and Kang, was supported by substantial evidence and was free from harmful legal error.

### b. Plaintiff's Testimony

Although plaintiff argues that the ALJ erred by discounting his symptom testimony, he cites no support for this proposition other than noting that the ALJ misevaluated the opinions of Drs. Choi and Kang. Dkt. 15, at 3–9. Because the Court affirms the ALJ's evaluation of the medical evidence, it also affirms the ALJ's decision to discount plaintiff's testimony for specific, clear and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ found physician Dr. Platter's non-examining opinion and psychologist Dr. Allison's examining opinion to be persuasive. Tr. 24–25. Dr. Platter noted several specific, clear and convincing reasons to discount plaintiff's symptom testimony. These included that plaintiff repeatedly cited a cerebrospinal fluid ("CSF") leak as the source of his headaches while all

imaging and medical opinions from 2010 onward have contradicted any past or present CSF leak; plaintiff stated his headaches were not alleviated by medication while also reporting that certain medications "worked very well"; and plaintiff referred to memory problems that were not observed in Dr. Allison's psychological examination or in numerous mental status examinations. Tr. 85; *see, e.g.*, Tr. 497, 526, 533, 539, 568, 643, 648, 658–59, 725, 786.

The Court finds that the ALJ's decision to discount plaintiff's symptom testimony was supported by substantial evidence and free from harmful legal error.

### 2. Assessment of RFC

Plaintiff argues that the ALJ's RFC assessment was erroneous because it failed to include limitations opined or suggested by Drs. Choi and Kang. The Court affirms the ALJ's evaluation of the opinions of Drs. Choi and Kang and therefore rejects plaintiff's contention. The Court finds that the ALJ's RFC assessment was supported by substantial evidence and free from harmful legal error.

### 3. Determination Regarding Past Relevant Work as a House Sitter

Plaintiff argues that the ALJ harmfully erred at step four by determining that plaintiff could perform his past relevant work as a house sitter. The Court disagrees.

At step four of the sequential evaluation, the claimant has the burden of showing that he does not have the residual functional capacity to engage in "past relevant work." 20 C.F.R. § 404.1520(e). A claimant's prior work qualifies as "past relevant work" if it "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). Thus, the Ninth Circuit observed that "[a] job qualifies as past relevant work only if it involved substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). "Substantial gainful activity" ("SGA") is defined as "work

activity that involves doing significant physical or mental activities . . . that [a claimant does] for pay or profit." 20 C.F.R. § 404.1572. "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Lewis*, 236 F.3d at 515. A presumption that a claimant engaged in SGA is made if a person's average monthly income from that activity exceeds a certain average that is designated for each calendar year. 20 C.F.R. § 404.1574; *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990).

   The ALJ determined that plaintiff had past relevant work as a house sitter because the job was performed within the past 15 years, was held for a sufficient length of time to learn the job, and produced earnings consistent with SGA. Tr. 26. This determination was supported by (1) plaintiff's hearing testimony that his friend paid him $500 per week in self-employment income in 2005 and 2007 for "living on his property and taking care of it," Tr. 41; (2) plaintiff's self-employment earnings report of $9,071 in 2005 and $15,154 in 2007, Tr. 68; and (3) the vocational expert's testimony that plaintiff's description of his self-employment duties comported with the position of "house sitter," DOT No. 109.367-010, Tr. 187. In 2005, the monthly SGA amount for non-blind individuals was $830, and in 2007, the amount was $900. *See* https://www.ssa.gov/oact/cola/sga.html. This would mean that plaintiff reported earning approximately $2,000 per month in 2005 for approximately four-and-a-half months, and $2,000 per month in 2007 for approximately seven-and-a-half months. It was not unreasonable, therefore, for the ALJ to determine that both periods of SGA occurred within the last 15 years of the ALJ's 2019 decision date, lasted long enough for plaintiff to learn the job, and was performed at an earnings level that presumptively constituted SGA.

   Plaintiff's arguments to the contrary are unpersuasive. First, plaintiff argues that the record does not adequately establish how much plaintiff was individually paid, how consistently,

or for how long. Dkt. 15, at 10–11. This contention is undermined by plaintiff's earnings record showing self-employment income of $9,071 in 2005 and $15,154 in 2007; plaintiff's hearing testimony that the entirety of his self-employment income for those years came from being paid $500 per week to take care of his friend's property; and plaintiff's failure to rebut the presumption of SGA from earning more than $830 per month in 2005 and $900 per month in 2007.

Second, plaintiff argues that the record does not properly establish what duties plaintiff performed beyond chopping wood and running a dozer; the ALJ failed to reconcile how chopping wood exceeds the exertional level of a house sitter; and the decision should have found that plaintiff actually performed a composite job of chopping wood *and* house sitting. Dkt. 15, at 11–14. These contentions are inapposite because it was not unreasonable for the ALJ to presume that plaintiff's admission to being paid $500 per week for "living on his [friend's] property and taking care of it" and "property sitting," Tr. 41, along with performing the incidental duties of chopping wood and running a dozer to maintain the road, was consistent with the vocational expert's testimony that "house sitter includes taking care of the grounds and the property outside," Tr. 70. Moreover, to the extent the ALJ erred by determining that plaintiff's RFC enabled him to perform the job of house sitter as it was actually performed (including chopping wood and using a grader), such an error was harmless because the ALJ also determined that plaintiff could perform the job of house sitter as it is generally performed. Tr. 26.

The Court finds that the ALJ's step four determination that plaintiff could perform his past relevant work as a house sitter was supported by substantial evidence and free from harmful legal error.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE MATTER WITH PREJUDICE - 9

**CONCLUSION**

The Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 29th day of July, 2021.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge